IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24-00013-01-CR-W-RK |
| | ) | |
| FRANK C. GARNER, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending is Defendant Frank C. Garner, Jr.'s Motion to Suppress Evidence and Statements filed on June 3, 2024. Doc. 26. On June 28, 2024, the Government filed Suggestions in Opposition. Doc. 35. Defendant filed his Reply on July 12, 2024. Doc. 38. On November 27, 2024, Defendant filed post-hearing supplemental briefing regarding the admissibility of defense expert testimony. Doc. 61. For the reasons set forth below, the undersigned recommends Defendant's motion to suppress be **DENIED**.

### I. BACKGROUND

On January 23, 2024, the grand jury returned an indictment charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Doc. 13. In the pending motion to suppress, Defendant argues there was no probable cause to arrest him for driving under the influence on January 1, 2024. Doc. 26 at 1, 3-9. Specifically, Defendant asserts the Standard Field Sobriety Tests ("SFSTs") unreliably measured cannabis impairment, and as such, his performance on the tests was insufficient to constitute probable cause for his arrest. *Id*. at 4-9.

He also contends all evidence found in his vehicle, including the firearm charged in the indictment, should be suppressed as fruit of the poisonous tree. *Id*. at 1, 9.[1]

On September 25 and November 14, 2024, the undersigned held evidentiary hearings.[2] Docs. 51, 55, 57, 60. Defendant was present and represented by Assistant Federal Public Defender Ronna Holloman-Hughes. *Id*. The Government was represented by Assistant United States Attorney Michael Green. *Id*. At the hearings, two witnesses testified: Officer Brett Schmidli and Travis Jones. *Id*. In addition, eighteen exhibits were admitted into evidence. Docs. 51, 57-58.

## II. FINDINGS OF FACT

Based on the evidence adduced at the evidentiary hearing, the undersigned submits the following findings of fact:

1. Independence, Missouri Police Department Officer Brett Schmidli ("Officer Schmidli") is a Drug Recognition Expert ("DRE") trained in recognizing signs of impairment from drugs including methamphetamine, PCP, cannabis, inhalants, hallucinogens, CNS depressants, and prescription pills.[3] Doc. 55 at 3-8; Gov't Ex. 2 at 2-3.[4] Since 2023, he has also worked as a SFST

---

[1] Defendant also asserts any incriminating statements he made after his arrest should be suppressed as fruit of the poisonous tree. Doc. 26 at 1, 9. However, Defendant fails to provide any argument or authority about the admissibility of potentially incriminating statements. And the Court cannot discern from Defendant's motion what statements he seeks to suppress. Regardless, the Court addresses Defendant's fruit of the poisonous tree argument as it relates to all evidence adduced from or after his arrest. *See infra*, section III(B).

[2] Due to limited availability of both parties' witnesses, September 25, 2024 at 2:30 p.m. was the earliest a suppression hearing could be scheduled in this matter. Both parties estimated the hearing would last approximately two hours. During the September 25, 2024 hearing, it became evident the hearing would last much longer than the allotted two hours. *See* Doc. 55 at 76-78, 80. To ensure both parties were afforded a fair and equal opportunity to present evidence and arguments, the Court left the hearing open and ordered the parties to confer about an additional date to continue the hearing. Doc. 55 at 76-78, 80; *see also* Doc. 51. The hearing continued on November 14, 2024. Docs. 56-57.

[3] For more than ten years, Officer Schmidli has been employed with the Independence, Missouri Police Department. Doc. 55 at 4; Gov't Ex. 2 at 2. In early 2022, Officer Schmidli became a certified DRE. Doc. 55 at 5, 8; Gov't Ex. 2 at 3. His DRE training consisted of two weeks of classroom training about various drug categories, SFTSs, and signs and symptoms of different drug impairment. Doc. 55 at 6-7. The DRE training also included one week of field evaluation training where Officer Schmidli performed drug recognition evaluations. *Id*. at 7; Gov't Ex. 2 at 7-12. Since he became a certified DRE, Officer Schmidli has received additional training, including a cannabis impairment training course where he learned about recognizing signs specific to cannabis impairment. Doc. 55 at 10; Gov't Ex. 2 at 23-24. Prior to his DRE training, Officer Schmidli performed approximately seventy-five DWI arrests. Doc. 55 at 5.

[4] The Court's citations to the Government's exibits reference the actual page in the PDF.

Instructor. Doc. 55 at 4-5, 8-9; Gov't Ex. 2 at 3. As an instructor, he trains new employees and other certified officers on how to administer and interpret SFSTs. Doc. 55 at 9. Between July 2022 and January 1, 2024, Officer Schmidli was involved in approximately 140 arrests where the individual was suspected of driving under the influence. *Id*. at 12.

2. On January 1, 2024, at approximately 10:35 p.m., Officer Schmidli was about to leave a QuikTrip convenience store located at 16001 East United States 24 Highway. *Id*. He observed a Chevrolet Cruze (hereinafter, "the vehicle") traveling westbound on 24 Highway without functioning headlights. *Id*. at 13. Officer Schmidli began following the vehicle. Doc. 55 at 13; Gov't Ex. 1 at 22:35:20.[5]

3. Officer Schmidli caught up to the vehicle near the intersection of 24 Highway and Salisbury. Doc. 55 at 13. He confirmed the vehicle was traveling without functioning headlights and taillights, which were traffic violations. Doc. 55 at 13, 16-18; Gov't Ex. 1 at 22:36:08 – 22:37:49. He also observed the vehicle weaving left to right within its travel lane and driving on the white line dividing the inside and outside lanes. Doc. 55 at 17, 47, 72, 75; Gov't Ex. 1 at 22:36:30 – 22:37:49.

4. Officer Schmidli ran a computer check on the vehicle's license plate number. Doc. 55 at 17. He discovered the vehicle was registered to Defendant, and there were no warrants for his arrest. Doc. 55 at 17, 46-47; Gov't Ex. 1 at 22:37:05 – 22:37:08. At this time, Officer Schmidli had not received any information indicating whether Defendant had felony convictions. Doc. 55 at 17.

5. At approximately 10:38 p.m., Officer Schmidli activated the lights on his patrol car to conduct a traffic stop on the vehicle. Doc. 55 at 18; Gov't Ex. 1 at 22:37:49 – 22:38:09. He decided to conduct the traffic stop because of the traffic violations he observed. Doc. 55 at 18. Additionally, he wanted to ensure the vehicle's driver was not impaired. *Id*. at 18-19.

---

[5] Government Exhibit 1 is the video recording from Officer Schmidli's dash camera on January 1, 2024. Doc. 55 at 13-14. The video recording's timestamps are in military time. Doc. 55 at 14. During the hearing, Officer Schmidli confirmed 22:35:20 equates to 10:35:20 p.m. Doc. 55 at 14-15.

6. The vehicle came to a stop, and Officer Schmidli approached the driver's side door. Doc. 55 at 19-20; Gov't Ex. 1 at 22:38:13 – 22:38:22. As he approached the vehicle, the officer smelled the odor of marijuana. Doc. 55 at 19-20. Officer Schmidli made contact with the only individual in the vehicle, who he later identified as Defendant. Doc. 55 at 19; Gov't Ex. 1 at 22:38:27. Defendant rolled down the backseat window on the driver's side because his front window did not work. Doc. 55 at 20; Gov't Ex. 1 at 22:38:26 – 22:38:29. To speak with Defendant, Officer Schmidli opened the driver's door. Doc. 55 at 20; Gov't Ex. 1 at 22:38:29 – 22:38:32. When the door was opened, the officer continued to smell the odor of marijuana. Doc. 55 at 20. He described the odor as moderate and "freshly burnt" or "fairly fresh." Doc. 55 at 19-20; Gov't Ex. 1 at 22:39:09 – 22:39:57. Officer Schmidli testified the odor of marijuana is a recognized indicator for potential cannabis impairment. Doc. 55 at 59; *see also* Def. Ex. 102 at 151.[6]

7. Officer Schmidli explained to Defendant that he was stopped for driving without headlights and taillights. Gov't Ex. 1 at 22:38:32 – 22:38:36. He asked Defendant "how long ago did you smoke marijuana?" Doc. 55 at 20; Gov't Ex. 1 at 22:38:41 – 22:38:43. Defendant answered "about two hours ago." Gov't Ex. 1 at 22:38:43 – 22:38:45.

8. Upon request, Defendant provided his driver's license. Gov't Ex. 1 at 22:38:45 – 22:38:53. Officer Schmidli went back to his vehicle to conduct a computer check on, among other things, Defendant's driving status. Doc. 55 at 20, 47-50; Gov't Ex. 1 at 22:38:58-22:41:29.

**Standard Field Sobriety Tests**

9. Officer Schmidli testified that, based on his training, individuals can show signs of impairment for "up to two to three hours and then even beyond that a little bit further" after using marijuana. Doc. 55 at 73; *see also* Def. Ex. 102 at 152 (indicating the duration of the effects of smoked marijuana can be three to four hours). At approximately 10:41 p.m., Officer Schmidli asked

---

[6] The Court's citations to Defendant's exhibit 102 reference the actual page in the PDF.

Defendant to exit the vehicle for SFSTs. Doc. 55 at 22; Gov't Ex. 1 at 22:41:46 – 22:41:55. SFSTs are a series of tests for impairment that are standardized and performed in a particular order. Doc. 55 at 22, 60.

10. Officer Schmidli first administered the Horizontal Gaze Nystagmus ("HGN") Test. Doc. 55 at 22-24; Gov't Ex. 1 at 22:42:20 – 22:43:32. According to Officer Schmidli, "nystagmus" is the involuntary jerking of the eyes. Doc. 55 at 23. During his administration of the HGN Test, Officer Schmidli did not observe any scoreable clues of impairment but noted Defendant had bloodshot eyes and choppy or irregular eye movement. Doc. 55 at 23-24, 55-56; Gov't Ex. 13 at 1. Officer Schmidli confirmed that bloodshot eyes are a recognized indicator of cannabis impairment. Doc. 55 at 59; *see also* Def. Ex. 102 at 151. Since cannabis does not induce nystagmus, the lack of observable clues for the HGN test is also consistent with cannabis impairment. Doc. 55 at 59-60; *see also* Def. Ex. 102 at 151.

11. Officer Schmidli also conducted the Lack of Convergence ("LOC") eye test. Doc. 55 at 24. According to Officer Schmidli, drug impairment, including cannabis, can prevent the eyes from converging. *Id*. During the LOC Test, Defendant's eyes converged in at first, but then his right eye returned to the center. *Id*. at 24, 58-59, 68, 73. Officer Schmidli explained Defendant's eye movement displayed LOC. *Id*. at 24. LOC is a recognized indicator of cannabis impairment. Doc. 55 at 24; *see also* Def. Ex. 102 at 92, 151.

12. After administering the eye tests, Officer Schmidli administered the divided attention tests, including the Walk and Turn Test and the One Leg Stand Test.[7] Doc. 55 at 24-25; Gov't Ex. 1 at 22:43:34 – 22:45:37. According to Officer Schmidli, there are two phases of the Walk and Turn Test, the instruction phase and the walking phase. Doc. 55 at 25. During the instruction phase, the

---

[7] According to Officer Schmidli, divided attention tests are performed because when an individual drives, he must be able to divide his attention to, among other things, thinking, reacting, and using proper judgment. Doc. 55 at 25.

individual stands with the heel of his right foot in front of the toes of his left foot while the test is explained. *Id*. The individual must maintain that stance during the explanation. *Id*. During the walking phase, the individual takes nine heel-to-toe steps while counting out loud. *Id*. When the individual takes their ninth step, they should land with their left foot in front. *Id*. Then, the individual turns around and takes nine heel-to-toe steps in the opposite direction. *Id*.

13. During the Walk and Turn Test, Defendant began walking before instructed, failed to maintain his stance, used his hand to hold himself up against the police vehicle's push bumper, failed to touch heel to toe during the test, and was unsteady, swayed, and slightly lifted up his arm up to help maintain balance. Doc. 55 at 27, 73-74; Gov't Ex. 1 at 22:43:39 – 22:44:43; Gov't Ex. 13 at 1. Officer Schmidli concluded Defendant displayed three scorable clues of impairment.[8] Doc. 55 at 25-27, 60, 68; Gov't Ex. 13 at 1.

14. During the One Leg Stand Test, the individual must stand with his feet together and arms down by his side. Doc. 55 at 27-28. Then, an officer instructs the individual to raise one foot six inches off the ground, parallel to the ground. *Id*. at 28. The individual then must look at the tip of their toes and hold the stance while counting out loud until instructed to stop. *Id*. During the One Leg Stand Test, officers look for clues of impairment such as swaying while balancing, using arms for balance, hopping, or putting the raised foot down. *Id*.

15. When he administered the One Leg Stand Test to Defendant, Officer Schmidli observed three of four scoreable clues of impairment. *Id*. at 28, 68. Defendant swayed while

---

[8] According to Officer Schmidli and the Alcohol Incident Report, there are eight scorable impairment clues to look for during the Walk and Turn Test. Doc. 55 at 25-26; Gov't Ex. 13 at 1. These clues are failing to maintain heel-to-toe stance, starting before instructed to begin, stopping while walking to steady oneself, failing to touch heel to toe (misses by more than half an inch), losing balance while walking, using arms for balance (arm raises more than six inches), losing balance while turning or making an improper turn, and taking the incorrect number of steps. *Id*. Officer Schmidli observed Defendant failed to maintain heel-to-toe stance, started before he was instructed to begin, and failed to touch heel-to-toe. Doc. 55 at 26-27, 60, 68; Gov't Ex. 13 at 1.

balancing, hopped, and put his foot down. Doc. 55 at 28, 74; Gov't Ex. 1 at 22:45:13 – 22:45:37; Gov't Ex. 13 at 1.

### **Defendant's Arrest**

16. At approximately 10:45 p.m., Officer Schmidli attempted to arrest Defendant for driving while intoxicated. Doc. 55 at 44; Gov't Ex. 1 at 22:45:38 – 22:47:17. He decided to arrest Defendant for driving while intoxicated based on Defendant driving without headlights or taillights, weaving within his lane of traffic, the odor of marijuana, Defendant's admission to recently using marijuana two hours before the traffic stop, and Defendant's performance on the SFSTs, including lack of HGN, lack of eye convergence, and clues of impairment observed during the walk-and-turn and one leg stand tests. Doc. 55 at 28-29, 72-75.

17. While Officer Schmidli attempted to arrest Defendant, he felt Defendant tense up and try to pull away. Doc. 55 at 29-30. Defendant stated "I'm not that high, bro." Doc. 55 at 29-30; Gov't Ex. 1 at 22:45:58 – 22:46:00. Officer Schmidli tried to place Defendant's hands behind his back. Doc. 55 at 30; Gov't Ex. 1 at 22:45:40 – 22:47:12. But Defendant started pulling towards the driver's side of the vehicle, which indicated to the officer that Defendant was going to attempt to flee or retrieve something. Doc. 55 at 30; Gov't Ex. 1 at 22:46:26 – 22:46:32. Officer Schmidli requested assistance from patrol officers. Doc. 55 at 31.[9]

18. Throughout the attempted arrest, Defendant was uncooperative and disobeyed verbal commands. Doc. 55 at 30-31, 64; Gov't Ex. 1 at 22:45:37 – 22:47:17. Officer Schmidli directed Defendant on multiple occasions to place his hands behind his back, but Defendant refused. Gov't Ex. 1 at 22:45:37 – 22:47:17. Officer Schmidli was concerned the attempted arrest was going to turn

---

[9] From the dashcam recording, the Court cannot discern when Officer Schmidli requested assistance. However, Officer Schmidli testified about requesting assistance, and the dashcam recording shows additional officers arriving at 10:48 p.m. Doc. 55 at 31, 33-34; Gov't Ex. 1 at 22:48:20 – 22:48:42.

into a fight. Doc. 55 at 31. He then took Defendant to the ground to gain more control over the situation. Doc. 55 at 31; Gov't Ex. 1 at 22:47:15 – 22:47:17.

19. After Officer Schmidli took Defendant to the ground, they both started to roll. Doc. 55 at 32. Officer Schmidli rolled off Defendant, who proceeded to stand. *Id*. Defendant then started to run into a grassy area on the north side of the highway. *Id*. As he was running, Defendant tripped. *Id*. Officer Schmidli got on Defendant's back and attempted to get Defendant's arms behind his back. *Id*. Defendant did a "kip up" or "buck up" movement causing Officer Schmidli to fall off him. *Id*. Defendant stood up and started running towards his vehicle. Doc. 55 at 32-33; Gov't Ex. 1 at 22:47:38 – 22:47:40.

20. At approximately 10:47 p.m., Officer Schmidli deployed his department-issued taser on Defendant to prevent him from getting into his vehicle and fleeing. Doc. 55 at 33-34; Gov't Ex. 1 at 22:47:40-22:47:46. He then directed Defendant to roll onto his stomach. Doc. 55 at 34; Gov't Ex. 1 at 22:47:47 – 22:47:56. Defendant disobeyed his instructions. Doc. 55 at 34; Gov't Ex. 1 at 22:47:47 – 22:47:56. As a result, Officer Schmidli deployed his taser again. Doc. 55 at 34; Gov't Ex. 1 at 22:47:55 – 22:48:01. With assistance from officers who had arrived on scene, Officer Schmidli handcuffed Defendant. Doc. 55 at 34; Gov't Ex. 1 at 22:48:31 – 22:48:51.

## Inventory Search of Vehicle

21. According to Officer Schmidli, Independence, Missouri Police Department Policy requires all vehicles in relation to DWI arrests be towed. Doc. 55 at 35. The policy also requires an inventory search of the vehicle prior to its towing. *Id*.

22. After Defendant was arrested, the officers conducted an inventory search of the vehicle. Doc. 55 at 35-36; Gov't Ex. 1 at 22:54:12 – 23:11:10. While conducting the inventory search, Officer Schmidli observed "green leafy fragments" and "little pieces of ash" on the driver's side floorboard. Doc. 55 at 36-38; Gov't Ex. 6. He also saw a "piece of a green leafy substance,"

"ash," and a "blunt . . . burnt on one end" in the vehicle's center console. Doc. 55 at 36-37; Gov't Exs. 3-5.

23.     During the inventory search, Officer Schmidli looked under the driver's seat and observed a firearm. Doc. 55 at 38-40; Gov't Ex. 1 at 23:01:25 – 23:01:38; Gov't Exs. 8-11. He recovered the firearm. Doc. 55 at 38-39. After recovering the firearm, Officer Schmidli discovered Defendant is a convicted felon.[10] *Id*. at 40-41. Defendant is charged in this matter with being a felon in possession of the firearm recovered during the inventory search. Doc. 13; *see also* Doc. 1.[11]

### **Defense Witness Travis Jones**

24.     From 1995 to 2009, Travis Jones served as a police officer. Doc. 60 at 10; Def. Ex. 100 at 3. As an officer, Mr. Jones was assigned to the DWI enforcement unit. Doc. 60 at 11. During his law enforcement career, he made approximately 1,500 DWI arrests, administered about 3,000 SFSTs, and became a DRE instructor. *Id*. at 11-12. Since 2010, Mr. Jones has worked in the traffic safety field as, among other things, an instructor, consultant, and witness. Doc. 60 at 10; Def. Ex. 100 at 3-4. Mr. Jones was trained in and instructs according to the standards of the National Highway Traffic Safety Administration ("NHTSA"). Doc. 60 at 16. NHTSA's curriculum is used to train officers and DREs in detecting impaired drivers. *Id*. at 16-18.

---

[10] After recovering the firearm, Officer Schmidli contacted dispatch and requested a computer check to determine if Defendant was a convicted felon. Doc. 55 at 40-41. He also testified that another officer on scene advised him of a comment Defendant made about being a felon for shooting at the police. *Id*. Officer Schmidli testified that he did not know about Defendant's status as a convicted felon until after the firearm was recovered. Doc. 55 at 17, 40-41.

[11] Before Defendant was taken from the scene, Officer Schmidli read Missouri implied consent to him, asked him if he was willing to submit to a blood draw for a chemical blood test, and advised that his license would be revoked if he refused. Doc. 55 at 41-43; Gov't Ex. 13 at 2. Defendant consented to the blood draw. Doc. 55 at 43; Gov't Ex. 13 at 2-3. Defendant was taken to the Independence, Missouri Police Department Headquarters detention unit where a blood draw was performed. Doc. 55 at 43-44. The blood was taken to Children's Mercy Toxicology. Doc. 55 at 44; Gov't Ex. 12. The lab results indicated Defendant had cannabis in his system – specifically, 388 nanograms per milliliter of Carboxy THC. Doc. 55 at 44, 62-64, 71; Def. Exs. 104-105. Carboxy THC is a non-psychoactive, or non-impairing, metabolite of Delta-9. Doc. 60 at 23. No active Delta-9 THC or hydroxy THC was found in Defendant's blood. Doc. 60 at 23; *see also* Def. Exs. 104-105. Nevertheless, because the blood draw occurred after Defendant's arrest, the Court does not consider the blood test results when evaluating probable cause to arrest on suspicion of driving while impaired. *See* Doc. 60 at 29 (establishing Officer Schmidli did not have the blood test results prior to arresting Defendant).

25. According to Mr. Jones, DREs are trained to recognize cannabis impairment in the Advanced Roadside Impairment Detection ("ARIDE") program. *Id*. at 15-16, 18. He explained ARIDE sets forth ten general indicators – i.e., signs, behaviors, or symptoms – to help officers determine whether a person is impaired and by which drug category. Doc. 60 at 33-34; *see also* Def. Ex. 102 at 151.

26. Based on his review of the police report and dashcam recording in this case, Mr. Jones opined some of Officer Schmidli's observations were consistent with cannabis impairment. Doc. 60 at 27, 29. Specifically, he explained Officer Schmidli observed two ARIDE general indicators of cannabis impairment: odor of marijuana and bloodshot eyes. Doc. 60 at 22, 27, 29; *see also* Def. Ex. 102 at 151.

27. Mr. Jones explained a low number of ARIDE indicators means there are not many observations of psychoactive, or active, drug impairment. Doc. 60 at 22-23. However, he also testified the list of ARIDE general indicators is not exhaustive, and "other tests and observations made by the officer in the totality of the investigation" can contribute to a probable cause determination. *Id*. at 36. For example, Mr. Jones acknowledged that Officer Schmidli's observations of lack of convergence of Defendant's eyes and no signs of HGN are additional factors indicating cannabis impairment. Doc. 60 at 26-28, 34, 36; *see also* Def. Ex. 102 at 151 (noting ten "general factors" of cannabis impairment and four separate "eye indicators" which also indicate cannabis impairment). The two eye observations are "separate" factors from the list of ten general indicators in the ARIDE materials. Doc. 60 at 34; *see also* Def. Ex. 102 at 151.

28. Mr. Jones testified that that in making a probable cause determination, an officer must assess all observations and reach a conclusion based on his or her training and experience. Doc. 60 at 29-31.

### III. DISCUSSION

Defendant asserts there was no probable cause to arrest him for driving while under the influence of marijuana,[12] and as a result, all evidence found in his vehicle and any incriminating statements he made should be suppressed as fruit of the poisonous tree. Doc. 26 at 3-9. The Government contends Officer Schmidli had sufficient probable cause to arrest Defendant for driving while under the influence of cannabis based on the information known to him at the time of arrest. Doc. 35 at 4-9. The Government also avers that if no probable cause existed for Defendant's initial arrest, his resistance and attempt to flee provided an independent basis for a valid arrest. *Id.*[13]

### A. Probable Cause

The Fourth Amendment does not forbid all searches and seizures, but only unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *United States v. Finley*, 56 F.4th 1159,

---

[12] According to Mr. Jones's testimony, marijuana falls within the cannabis drug category. Doc. 60 at 18. Further, the parties refer to cannabis and marijuana impairment interchangeably. *See* Doc. 26; Doc. 35. Accordingly, the undersigned does the same.

[13] Government counsel objected to Mr. Jones's testimony to the extent he was offering an expert opinion about whether or not the officer had probable cause to arrest. Doc. 60 at 3-6. The Government asserted expert testimony is irrelevant to a determination of probable cause, which is a question of law for the Court to decide. *Id.* In support, the Government provided two cases: *Peterson v. City of Plymouth*, 60 F.3d 469 (8th Cir. 1995), and *Linin v. Neff*, No. 2:15-cv-298-JNP-PMW, 2017 WL 3841848 (D. Utah Sept. 1, 2017). In *Peterson*, the Eighth Circuit found the district court committed reversible error by allowing an expert to testify in a civil jury trial about "the reasonableness" of an officer's conduct "in light of Fourth Amendment standards." 60 F.3d at 475 (internal quotations omitted). The Eighth Circuit observed that probable cause is ultimately a question of law and expert testimony about the reasonableness of police conduct was a "statement of legal conclusion" for the court to make, and not the jury. *Id.* In *Linin*, the district court granted a motion in limine, thereby excluding expert testimony at trial concerning the reasonableness of law enforcement, which is a legal conclusion not subject to expert testimony. 2017 WL 3841848, at *2. Ironically, the proposed expert testimony in *Linin* also involved Mr. Jones as a witness. *Id.* at *1. Unlike *Peterson* and *Linin*, the instant case involves a pretrial suppression hearing. "The rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *United States v. Matlock*, 415 U.S. 164, 172-73 (1974). When a court decides "any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible," "the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a); *see also* Fed. R. Evid. 1101(d)(1). Thus, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986) (citations omitted). Furthermore, Mr. Jones did not opine about whether Officer Schmidli had probable cause to arrest Defendant. *See* Doc. 60 at 9-38. For these reasons, the undersigned has considered Mr. Jones's testimony and has made findings of fact in that regard. In addition, as analyzed more fully below, the testimony of Mr. Jones is inconsequential to the determination of probable cause to arrest.

1165 (8th Cir. 2023) (citation omitted). The probable cause standard is "not a high bar." *United States v. Edwards*, 891 F.3d 708, 711 (8th Cir. 2018) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "Probable cause is assessed based on the totality of circumstances." *United States v. Thabit*, 56 F.4th 1145, 1151 (8th Cir. 2023) (citation omitted). "[P]robable cause exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." *United States v. Brooks*, 982 F.3d 1177, 1180 (8th Cir. 2020) (citation omitted).

For a warrantless arrest, there must be probable cause for all elements of an offense. *See Finley*, 56 F.4th at 1165. However, an officer is not required to "establish the elements of the offense with a level of certainty as though trial-level proof must exist at the side of the road." *Brooks*, 982 F.3d at 1180 (citation omitted). Instead, probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Edwards*, 891 F.3d at 711 (quoting *Wesby*, 583 U.S. at 57). "To determine whether an officer had probable cause to arrest an individual, [a court must] examine the events leading up to the arrest" and analyze whether the facts, "viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotations and citation omitted). "In making a probable cause determination, law enforcement officers have substantial latitude in interpreting and drawing from factual circumstances." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013) (internal quotations and citation omitted).

Defendant argues his arrest lacked probable cause because it was not supported by reliable and trustworthy evidence of Defendant driving while under the influence of marijuana. Doc. 26 at 4-9. Defendant specifically challenges the administration and reliability of SFSTs in detecting cannabis impairment. *Id.* at 6-9. The Government contends Officer Schmidli's observations prior to the

SFSTs, combined with Defendant's "deficient performance" on the tests, "provided more than sufficient probable cause to arrest [Defendant] for driving under the influence." Doc. 35 at 6.

### (1) Driving While Under the Influence of Marijuana

Driving while intoxicated is a violation of Missouri law. *See* Mo. Rev. Stat. § 577.010.1 (2017). A person is "intoxicated" when he "is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Mo. Rev. Stat. § 577.001(13) (2020). Marijuana remains listed as a Schedule I controlled substance under Missouri law. Mo. Rev. Stat. § 195.017.2(5)(ff); *see also* Mo. Rev. Stat. § 577.001(8) (defining "controlled substance" as "a drug, substance, or immediate precursor in schedules I to V listed in section 195.017"). Despite the State of Missouri recently legalizing personal possession of marijuana in specified circumstances,[14] driving a motor vehicle while under the influence of marijuana is still prohibited. Mo. Const. art. 14, §§ 2.1 ("This section is not intended to allow for . . . driving while under the influence of marijuana"), 2.10(10) (stating possession of the lawful amount of marijuana or "the odor of marijuana or burnt marijuana" shall not constitute reasonably articulable suspicion of a crime "except when law enforcement is investigating whether a person is operating a motor vehicle . . . while under the influence of marijuana").

### (2) Officer's Observations Before the SFSTs

According to Officer Schmidli, he decided to arrest Defendant based on multiple observations he made, including observations made prior to the administration of SFSTs. Officer Schmidli first observed Defendant driving at night without headlights or taillights. He also saw Defendant's vehicle weaving left to right within his lane and driving on the white line dividing the inside and outside lanes of the highway. When Officer Schmidli approached the vehicle, he smelled an odor of "freshly burnt"

---

[14] In Missouri, it is no longer illegal for a person twenty-one years of age or older to purchase, possess, consume, use, ingest, inhale, process, transport, deliver without consideration, or distribute without consideration three ounces or less of dried, unprocessed marijuana or its equivalent. Mo. Const. art. 14, §§ 2.1, 2.10(1)(a).

marijuana[15] emanating from Defendant's vehicle.[16]  Further, Defendant admitted he had smoked marijuana "about two hours ago."

Officer Schmidli could have relied solely on these observations in determining he had probable cause to arrest Defendant for driving under the influence of marijuana. *See United States v. Houston*, 548 F.3d 1151, 1154 (8th Cir. 2008) (finding sufficient probable cause for arrest of an individual for impaired driving where an officer observed the individual commit a traffic violation, smelled the odor of marijuana emanating from the vehicle, and the individual admitted to recently smoking a joint); *see also United States v. Wright*, 844 F.3d 759, 762-63 (8th Cir. 2016) (finding "[o]nce the . . . officer detected an odor of marijuana coming from [the defendant's] person, the officer had probable cause to arrest" the defendant).  However, based on his observations, Officer Schmidli decided to conduct SFSTs.

### (3) Defendant's Performance on the SFSTs

Officer Schmidli administered SFSTs consisting of the HGN Test, Walk and Turn Test, and One Leg Stand Test.  He also performed the LOC eye test.  During the HGN test, Officer Schmidli did not see any scoreable clues of impairment.  But he noted Defendant's eyes were bloodshot, and his eye movements were choppy or irregular.  Officer Schmidli also observed Defendant's eyes displayed a lack of convergence.  He considered Defendant's bloodshot eyes, choppy or irregular eye movement, and lack of convergence to be signs of possible cannabis impairment.  Defense witness

---

[15] Defense witness Jones confirmed that odor of marijuana is a recognized indicator of cannabis impairment.  Doc. 60 at 21-22, 27.

[16] Defendant contends the odor of marijuana alone is insufficient to constitute probable cause for arrest of an individual for driving while impaired by marijuana.  Doc. 26 at 4.  However, in making his probable cause determination, Officer Schmidli did not solely rely on the smell of marijuana emanating from Defendant's vehicle.  *See infra* section III(A)(2)-(3).  Defendant's argument fails because it does not account for the other impairment indicators observed by Officer Schmidli and Defendant's admission to recent usage of marijuana.

Jones confirmed bloodshot eyes, no HGN signs, and lack of convergence are factors indicating cannabis impairment.[17]

During the Walk and Turn Test, Officer Schmidli noted Defendant displayed three scoreable clues of impairment. Specifically, Defendant failed to maintain a heel-to-toe stance, he started before he was instructed to begin, and he failed to touch heel-to-toe. Further, Officer Schmidli observed Defendant was unsteady, swayed, and slightly lifted his arm up to maintain balance. Defendant also performed poorly on the One Leg Stand Test, displaying three of four scoreable clues of impairment: swayed while balancing, hopped, and put his foot down.

Defendant asserts SFSTs are "too unreliable in general to be used as a measure of marijuana-impaired driving." Doc. 26 at 8. However, in Missouri, field sobriety tests are often used as a measure of marijuana impaired driving. *See State v. Pfleger*, 341 S.W.3d 876, 876-77 (Mo. Ct. App. 2011) (finding sufficient evidence to support a conviction for driving while impaired by marijuana based in part on the defendant's failure of certain field sobriety tests); *see also Urbaniak v. Dir. of Revenue*, 651 S.W.3d 853, 860-63 (Mo. Ct. App. 2022) (rejecting a probable cause challenge alleging field sobriety tests were unreliable in detecting alcohol and marijuana intoxication and observing "[t]here is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt.") (citation omitted). Further, federal courts have upheld probable cause findings in instances where SFSTs were used to detect marijuana impaired driving. *See United States v. Edwards*, 519 F. App'x 411, 413-14 (7th Cir. 2013); *United States v. Johnson*, No. 23-cr-65 (JNE/LIB), 2023 WL 8358611 at *14 (D. Minn. Oct. 5, 2023);

---

[17] Mr. Jones also suggested Officer Schmidli's description of the LOC did not "match exactly" how it is described in the DRE materials. Doc. 60 at 20. On cross examination, Mr. Jones acknowledged that he was not on the scene and was only evaluating Officer Schmidli's description of his observations regarding LOC. Doc. 60 at 27-28. The Court finds that Officer Schmidli, as an experienced police officer and a formally trained DRE, provided credible testimony concerning his observations in this case, including his observations made during the LOC test.

*United States v. Thomas*, No. 2:17-CR-00028-RWS-JCF, 2018 WL 7283634 at *9 (N.D. Ga. Nov. 18, 2018).

"Field sobriety tests are not a requirement for an officer to develop probable cause [to arrest] an individual [for] driving while intoxicated." *State v. Swartz*, 517 S.W.3d 40, 55-56 (Mo. Ct. App. 2017) (quoting *Lord v. Dir. of Revenue*, 427 S.W.3d 253, 257 (Mo. Ct. App. 2014)); *see also United States v. Simpson*, No. 4:20-CR-00145-01-BCW, 2022 WL 5027467 at *7 n.14 (W.D. Mo. Oct. 4, 2022) ("lack of field sobriety tests is not dispositive on the issue of probable cause."). However, a SFST may "supplement the officer's other observations in determining whether probable cause exists." *Swartz*, 517 S.W.3d at 55-56 (citation omitted).

The undersigned finds Officer Schmidli properly considered Defendant's poor performance on the SFSTs, in addition to his other observations discussed *supra*, section III(A)(2), in reaching a probable cause determination. *See Winarske*, 715 F.3d at 1067 (8th Cir. 2013) ("In making a probable cause determination, law enforcement officers have substantial latitude in interpreting and drawing from factual circumstances.") (citation omitted). When considering Officer Schmidli's observations prior to administering the SFSTs, the admission by the defendant to recent marijuana usage, and the clues of impairment observed during the SFSTs, the undersigned finds an objectively reasonable officer would have concluded sufficient probable cause existed to arrest Defendant for driving while under the influence of marijuana. *See Pringle*, 540 U.S. at 371 (citation omitted).

The testimony of defense witness Jones does not change the analysis above.[18] Mr. Jones testified Officer Schmidli only observed two of ten general ARIDE indicators of cannabis impairment: bloodshot eyes and odor of marijuana. Doc. 60 at 22. But he also acknowledged that LOC and no signs of HGN are additional factors of cannabis impairment that are separate from the

---

[18] Mr. Jones testified about a subsequent blood test administered to Defendant. Doc. 60 at 23. The Court finds this portion of his testimony irrelevant to the determination of probable cause to arrest because Officer Schmidli did not have the results of the blood test when he made the arrest. *Id*. at 29.

ten general ARIDE indicators. Doc. 60 at 26-27, 34, 36; *see also* Def. Ex. 102 at 151 (recognizing ten general indicators for cannabis impairment and four separate "eye indicators," including lack of convergence and no HGN). This testimony was somewhat confusing because in actuality, there were four ARIDE indicators of cannabis impairment present: bloodshot eyes, odor of marijuana, no signs of HGN, and lack of convergence.

Mr. Jones acknowledged the ARIDE indicators are not an exclusive or exhaustive list and additional factors could support probable cause. Doc. 60 at 36. He acknowledged there is no set number of factors that must be present to have probable cause to arrest, even admitting that one factor could "probably" support probable cause to arrest an individual for driving while under the influence of cannabis in certain circumstances. Doc. 60 at 28-29.

Mr. Jones also testified that driving without headlights has "no correlation" to "cannabis-impaired" driving, but has been formally studied and associated with alcohol-impaired driving. Doc. 60 at 31-33. This testimony could imply that driving without headlights may not be a proper factor for a probable cause determination in a cannabis impairment case. The Court disagrees. Despite the lack of official studies demonstrating a correlation between driving without lights and cannabis impairment, it was reasonable for Officer Schmidli to rely on Defendant driving without lights as a factor in his initial stop and his overall probable cause determination. *See Houston*, 548 F.3d at 1154 (finding probable cause to arrest an individual for driving under the influence of marijuana based in part on the officer's observation of a traffic violation); *United States v. Jackson*, 103 F.4th 483, 487-88 (7th Cir. 2024) (finding an officer had probable cause to search an individual's vehicle for evidence of marijuana-impaired driving based in part on the individual driving at night with no headlights or taillights). The Court finds Mr. Jones's testimony about the lack of studies correlating unlit headlights and taillights with cannabis impairment is irrelevant.

Mr. Jones testified the walk and turn test and the one leg stand test were developed and validated for evaluating a person under the influence of alcohol. Doc. 60 at 20-21. He indicated the studies have not validated the SFSTs for cannabis impairment "to the same extent" as the alcohol studies. Doc. 60 at 21. This testimony could be interpreted to imply the walk and turn and one leg stand SFSTs are not reliable for cannabis impairment. However, the ARIDE training materials submitted by defense counsel indicate that because cannabis impairs attention, the divided attention tests including the walk and turn test and the one leg stand test "are excellent tools for recognizing people under the influence of cannabis." Def. Ex. 102 at 150.

The Court finds Mr. Jones's testimony concerning the validation of the SFSTs is irrelevant to the probable cause determination. Accordingly, the undersigned recommends the Court find sufficient probable cause existed to support the arrest of Defendant for driving while under the influence of cannabis.

### (4) Defendant Resisting Arrest

The Government alleges Defendant's actions in resisting arrest provided an independent basis for Defendant's arrest. Doc. 35 at 6-9. Defendant claims he did not resist arrest under Missouri law because "he did not use force or violence against [Officer] Schmidli." Doc. 38 at 3-5. He further contends he did not act with the purpose of preventing the arrest. *Id*. at 5. Instead, Defendant maintains "he verbally protested and wanted an explanation as to why he was being arrested." *Id*.

In Missouri, "a person commits the offense of resisting . . . arrest" when "he or she knows or reasonably should know that a law enforcement officer is making an arrest," and "for the purpose of preventing the officer from effecting the arrest," he or she "[r]esists the arrest . . . by using or threatening use of violence or physical force **or by fleeing from [the] officer**." Mo. Rev. Stat. § 575.150.1(1) (2017) (emphasis added). The Eighth Circuit has "consistently held that a defendant's response to an arrest[,] . . . even an invalid one[,] may constitute independent grounds for arrest."

18

Case 4:24-cr-00013-RK    Document 63    Filed 03/04/25    Page 18 of 20

*United States v. Flores-Lagonas*, 993 F.3d 550, 560 (8th Cir. 2021) (citations omitted). Most relevant here, the Eighth Circuit has held "[a] suspect's flight can provide probable cause for an arrest, and deploying a taser is an appropriate way to effectuate such an arrest." *United States v. Stevenson*, 66 F.4th 1143, 1146 (8th Cir. 2023) (finding probable cause to arrest a defendant where he displayed "disobedience, [a] shifty gaze, and pivot[ed] as if to run" which "led the officers to reasonably believe he was about to flee.") (citation omitted).

When Officer Schmidli attempted to arrest Defendant, he was uncooperative, disobeyed verbal commands, and pulled towards the driver's side of the vehicle. This led Officer Schmidli to believe Defendant was attempting to flee or retrieve something from his vehicle. To gain more control over the situation, Officer Schmidli took Defendant to the ground. Once they were on the ground, Officer Schmidli rolled off Defendant. Defendant stood up and began running into a field. He tripped and Officer Schmidli got on Defendant's back and attempted to pull his arms behind his back. Defendant caused Officer Schmidli to fall off him, he stood up, and began running towards his vehicle. Officer Schmidli then tased Defendant.

Defendant contends in his motion he ran from Officer Schmidli "because he feared for his life." Doc. 38 at 5. However, his "perception of the officers is not relevant" because the Court must determine if there was probable cause based on "the facts known to the arresting officer at the time of the arrest." *Finley*, 56 F.4th at 1165. Because Defendant was uncooperative, disobeyed verbal commands, and fled from Officer Schmidli twice, the undersigned finds it was reasonable for Officer Schmidli to believe Defendant was trying to flee to prevent the arrest. Thus, the undersigned finds Defendant's resistance and attempted flight provide additional circumstances supporting Officer Schmidli's probable cause determination.[19] The undersigned recommends the Court find the same.

---

[19] Because the undersigned recommends the Court find sufficient probable cause for driving while under the influence of cannabis based on Officer Schmidli's observations discussed *supra*, section III(A)(2)-(3), the undersigned does not need to determine if Defendant's flight provides an independent basis for his arrest.

B. **Fruit of the Poisonous Tree**

Defendant contends all evidence found in his vehicle and all statements made after his arrest should be suppressed as fruit of an unlawful arrest.[20] Doc. 26 at 1, 9. Because the undersigned recommends the Court find there was probable cause for Defendant's arrest, the evidence seized from Defendant's vehicle and the statements made after his arrest need not be suppressed under the exclusionary rule. *See United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023) (citation omitted) (holding the exclusionary rule "extends to evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'"); *see also United States v. Baez*, 983 F.3d 1029, 1041-42 (8th Cir. 2020) (finding incriminating statements made by a defendant in custody after his arrest were not excludable because the challenged arrest was lawful).

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's motion to suppress evidence and statements (Doc. 26). Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on grounds of plain error or manifest injustice.

DATE: March 4, 2025              /s/ W. Brian Gaddy
                                                                    W. BRIAN GADDY
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[20] Because Defendant did not challenge the search of the vehicle (*see* Doc. 26), the undersigned does not address the validity of the inventory search. However, the undersigned notes the Eighth Circuit has "repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *United States v. Milk*, 66 F.4th 1121, 1131 (8th Cir. 2023) (quoting *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020)); *see also United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016) ("The odor of unburned marijuana can be highly probative in establishing probable cause for a search.") (citations omitted). Here, the odor of marijuana emanating from Defendant's vehicle provided Officer Schmidli with probable cause to search the vehicle for evidence of marijuana-impaired driving under the automobile exception.